1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7              FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10    MICHAEL MENDEZ,                          No. C 03-00022 WHA

11              Petitioner,

12       v.                                    **ORDER DENYING PETITION
                                               FOR WRIT OF HABEAS CORPUS**
13    DERRAL ADAMS, Warden, California
      Substance Abuse Treatment Facility and State
14    Prison,

15              Respondent.
                                        /
16    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

17                           **INTRODUCTION**

18        In this habeas case, petitioner claims that constitutional violations tainted his state

19    conviction for child molestation.  His petition is **DENIED**.  None of the alleged constitutional

20    violations is well founded.

21                            **STATEMENT**

22        A jury found Michael Mendez guilty of multiple sex offenses against two young boys.

23    Sentence-enhancement and probation-ineligibility allegations were also found to be true.  The

24    trial court sentenced petitioner to an aggregate prison sentence of 167 years to life under

25    California's Three Strikes system.[1]

26

27

28    ⎯⎯⎯⎯⎯⎯⎯⎯⎯

        [1] Facts in this section are from *People v. Mendez*, No. A088557, slip op. (Cal. Ct. App. June 22, 1001)
      (unpublished).  No material fact is disputed, except the degree, if any, of petitioner's mental incompetence to
      stand trial.

*United States District Court*
For the Northern District of California

At trial, the prosecution presented evidence that petitioner molested A.W. and D.H., who were the sons of petitioner's friends.  In early 1998, petitioner, then 33 years old, moved in with the mother of ten-year-old A.W.  Petitioner allegedly molested A.W. between January and March of that year.  Petitioner babysat A.W. when his mother was away, sometimes for two days at a time.  She said that petitioner and A.W. were together "almost constantly."  One of the mother's housemates testified that petitioner and the boy were "inseparable."  Petitioner allegedly slept in the same room as A.W. and then on the same couch.  Another housemate testified that petitioner once came into her room, distraught and in tears, asking why A.W. did not "love him the way he loved [the boy]."[2]

Bizieff said she once saw petitioner and A.W. lying together on the couch.  Petitioner, she testified, had one hand inside his pants and the other on A.W.'s crotch.  A different housemate accused petitioner of masturbating while sitting next to A.W.  A couple days later, she saw them asleep with petitioner's hand on A.W.'s crotch.  The following morning, she told A.W.'s mother that something "really strange" was going on between the boy and petitioner.

A day or two later, one of the housemates reported petitioner's behavior to police.  Officers found petitioner walking with A.W. on a street.  They interviewed the boy at the police station.  He did not report any lewd acts that day, nor in another interview the next morning.  An interviewer from a child-abuse agency described him as embarrassed and "extremely afraid."

The mother agreed for A.W. to live in a foster home.  The foster mother reported that she was once shopping with the boy when he saw petitioner.  A.W. hid and wanted to leave the store immediately.  "What if he comes up to me?  What if he says something?" A.W. said.  The foster parents also saw petitioner walking back and forth in front of their house.  They said that he shattered their front picture window one evening.  When police arrested him shortly thereafter, he was bleeding.  They reported that they found a picture of A.W. in his pocket.  Two days after the window event, petitioner was detained for loitering near A.W.'s school.

---

[2] To protect the boys' privacy, this order refers to them by their initials.

United States District Court
For the Northern District of California

A sheriff's deputy later served petitioner with a restraining order while he was at the home of a friend. The friend's son, D.H., was nine. He answered the door. Two officers later spoke with D.H., who told them that petitioner had molested him. Petitioner claimed that he swatted the boy on the butt, wrestled with him, and once accidentally touched D.H.'s crotch.

D.H. told a child-abuse services worker, in a videotaped interview later introduced at trial, that petitioner had fondled the boy's penis and buttocks, made D.H. touch petitioner's penis and masturbated in front of the boy.

The child-abuse services team re-interviewed A.W. This time, he described lewd touching by petitioner. A.W. said that petitioner had fondled the boy's penis, orally copulated him and tried to make A.W. fondle and orally copulate petitioner. The jury watched A.W.'s two videotaped interviews.

At trial, A.W. testified that petitioner had used his hands and mouth to touch A.W.'s "private areas" many times. On a drawing, he indicated that those areas were his penis and buttocks. He said he did not, at first, reveal the lewd acts because he was "embarrassed" and "scared."

D.H. testified that petitioner touched him, more than once, "in a place [D.H.] didn't want to be touched." D.H. marked the penis and buttocks of an anatomical drawing when asked where petitioner touched him. He said that the petitioner, two or three times, had grabbed the boy's hand and made him touch petitioner's penis.

The prosecution introduced evidence of petitioner's prior convictions upon guilty pleas: one in 1989 for sexual battery upon a five-year-old and one in 1990 for committing a lewd act upon a seven-year-old boy.

The jury found petitioner guilty of a forcible lewd act upon D.H., two counts of non-forcible lewd acts on him, annoying or molesting D.H. after a prior conviction for a sexual offense, and two counts of lewd acts with A.W. The jury also found to be true multiple sentence-enhancement and probation-ineligibility allegations. Petitioner is in prison for life.

The state court of appeal rejected petitioner's claims of error. The California Supreme Court refused to hear his appeal. Both courts rejected his petitions for a writ of habeas corpus without opinion. This action followed.

3

**United States District Court**
For the Northern District of California

**ANALYSIS**

A person in custody pursuant to a state judgment may be granted a writ of habeas corpus if he is being held in violation of the Constitution, laws or a treaty of the United States. He or she must, however, meet certain requirements. The petitioner's claim of error must have been adjudicated and rejected on the merits by a state court. The petitioner must have exhausted his avenues for direct appeal in state court. He or she must also establish that either (1) the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. 2254(d).

A state court's decision is "contrary to" federal law if it fails to apply the correct Supreme Court authority or if it applies it incorrectly to a case involving facts "materially indistinguishable" from those in the controlling decision. A state court's decision involves an unreasonable application of federal law if it correctly identifies the governing Supreme Court rule but then applies it to a new set of facts in a way that is objectively unreasonable, or if it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams v. Taylor*, 529 U.S. 362, 405–12 (2000).

Circuit caselaw is not controlling upon a district court when it considers whether a state court's adjudication was contrary to, or involved an unreasonable application of, clearly established federal law. The statute prescribes that the district court may only treat Supreme Court caselaw as binding. This order assumes that circuit court decisions are binding, however, if they interpret federal law under the habeas standards. Circuit caselaw also may be considered as persuasive authority for whether the state court decision was unreasonable. *Duhaime v. Ducharme*, 200 F.3d 597, 600–01 (9th Cir. 2000).

To decide a claim, the court must "first decide what constitutes clearly established federal law, as determined by the Supreme Court" at the time of the time of the state court's decision. The court considering the petition must then answer whether the state court's determination was contrary to that law or involved an unreasonable application of it. *Lockyer v. Andrade*, 538 U.S. 63, 71–73 (2003).

When evaluating the state court's adjudication, federal courts examine the last reasoned judgment of a state court, not later, unexplained decisions upholding that judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

**1.     COMPETENCY TO STAND TRIAL.**

**A.     Petitioner's Claim.**

Petitioner claims he was denied procedural due process, in violation of the Due Process Clause of the Fourteenth Amendment, because there was substantial evidence that raised an objective doubt as to his mental competency to stand trial and yet the trial court did not hold an evidentiary hearing to resolve the issue.

**B.     Relevant Facts.**

Jury selection in petitioner's trial began May 25, 1999, and continued on the next three days. Over the weekend, defense counsel advised him that he had no defense to the charges, should accept the plea bargain, and that the lawyer had not spoken with witnesses petitioner had asked him to interview. On the next court day, petitioner informed the court of his conditions for entering into the proposed plea agreement and said that, if they were not met, he would move to represent himself. The court denied that motion as untimely, stated that nothing indicated that the attorney-client relationship was dysfunctional and said defense counsel had been doing his "usual excellent job." Petitioner renewed his motion the next day and was denied a second time. Petitioner renewed his motion two more times. It was never granted. The same attorney continued to represent petitioner throughout the trial.[3]

On June 1, 1999, the state offered to support a sentence of 25 years to life in prison if petitioner would plead guilty to one of the counts. Petitioner counter-offered that he would accept those terms if he could have a videotaped confirmation that A.W. was told that petitioner was pleading guilty only to a count involving D.H., not A.W., and that A.W.'s school records be purged of any reference to the alleged molestation. As petitioner told the trial court, "I'm doing [the plea bargain] for one person, one person only, and that's [A.W.] . . . and I want him

_____

[3] Unless otherwise indicated, description of petitioner's trial court proceedings are from the Clerk's Transcript on Appeal, Vols. 1–2, and the Reporter's Transcript on Appeal, Vols. 1–2, *People v. Mendez*, No. CR983811 (Super. Ct.).

**United States District Court**
For the Northern District of California

1   to know that. . . . I want him to tell me that he knows this and that he personally himself . . .

2   knows that I did this for him." He specifically rejected communicating the agreement to A.W.

3   by letter. The judge said that conditioning the plea on a response from A.W. "simply isn't

4   going to happen" because the court had no power to order A.W. to do so. The judge also said

5   he had no authority to order removal of material from A.W.'s school records. Petitioner's

6   counsel said that he did not believe a deal could be reached. The prosecutor then rejected the

7   conditions and stated that the offer would be withdrawn if petitioner left the courtroom without

8   accepting it. Petitioner never accepted the deal.

9   Seven days later, petitioner's attorney asked the judge to suspend the trial to investigate

10  whether defendant could assist him rationally in his own defense. At that point, the trial judge

11  had observed petitioner in court on several occasions. Counsel declared that his doubt was due

12  to his observation of things that "would suggest some degree of decompensation or

13  exacerbation of the problem." The judge said, "I will suspend criminal proceedings pursuant to

14  [California] Penal Code Section 1368," which governs competency hearings in criminal

15  proceedings. He stated that the court and the parties later would discuss experts to examine

16  petitioner. After a recess, however, the judge told parties that he would not suspend

17  proceedings after all. The judge said he would instead appoint an expert to assist him in

18  deciding whether to order a competency hearing. After receiving a psychologist's report, the

19  court found that there was no substantial evidence that the defendant was incompetent to stand

20  trial. The jury trial resumed.[4]

21          **C.    Applicable Law.**

22          To be competent to stand trial, a defendant must have "sufficient present ability to

23  consult with his lawyer with a reasonable degree of rational understanding . . . and . . . a rational

24  as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362

25  U.S. 402, 402 (1960). A trial court must hold an evidentiary hearing on competency if there is

26  substantial evidence raising a reasonable doubt as to the accused's competency. Failure to grant

27

28          [4] Decompensation is the "inability to maintain defense mechanisms in response to stress, resulting in personality disturbance or psychological imbalance." The American Heritage Dictionary of the English Language (4th ed. 2000), *available at* http://dictionary.reference.com/search?q=decompensation (last viewed Dec. 14, 2005).

United States District Court
For the Northern District of California

1    a hearing in such a case violates the Fourteenth Amendment Due Process Clause. *See Pate v.*

2    *Robinson*, 383 U.S. 375, 385 (1966).

3        *Pate v. Robinson* and *Drope v. Missouri*, 420 U.S. 162 (1975), provide the constitutional

4    standards for what evidence requires a competency hearing. In *Robinson*, the accused had bled

5    severely and suffered headaches after being struck in the head with a brick. His mother said he

6    was not normal afterward. Four witnesses testified that the accused had "long history of

7    disturbed behavior." During a stay at a county "Psychopathic Hospital," he was described as

8    imagining "he heard voices, voices of men and women . . . . He saw animals, snakes and

9    elephants and this lasted for about two days. . . . The voices threatened him. He imagined

10    someone was outside with a pistol aimed at him. He was very, very scared . . . ." After release,

11    he shot and killed his infant son. He later went to a police station to confess. When he removed

12    his hat, the police saw that he had shot himself in the head. *Robinson*, 383 U.S. at 380–81. In

13    *Drope*, a psychiatrist diagnosed the accused with having a personality disorder, sexual

14    perversion, borderline mental deficiency and chronic anxiety with depression. During an

15    overnight break in the prosecution's case-in-chief, the accused deliberately shot himself. Later,

16    two psychiatrists testified. One said that the accused might not be competent to stand trial. The

17    other recommended an examination to settle the issue. No examination was ordered. The state

18    court of appeals affirmed. *Drope*, 420 U.S. at 165, 167, 169–70. Our own facts pale by

19    comparison to those in *Robinson*.

20        **D.**     **Analysis**.

21        Petitioner claims four types of evidence objectively raised a doubt about his

22    competence.

23        *First*, he invokes trial counsel's statement of doubt as to petitioner's competency. This

24    statement was, however, conclusory and vague. It therefore did not raise sufficient doubt to

25    require a full competency hearing.

26        *Second*, petitioner invokes his rejection of the plea bargain. His current counsel

27    contends that petitioner's decision "meant conviction" because he had "no defense" and

28    therefore "manifest[ed] a mind out of touch with reality." The decision not to accept the plea

bargain was not irrational. In retrospect, it may seem foolhardy. But when he made that

United States District Court

For the Northern District of California

7

decision, he had neither seen all the government's evidence nor cross-examined and attempted to impeach witnesses. He could have harbored a rational hope of acquittal, or perhaps of receiving a better plea offer later.

*Third*, petitioner argues that his lack of rational ability was demonstrated in his repeated attempts to fire his attorney and represent himself. He claims that without an attorney he had no chance of acquittal. When combined with his rejection of the plea bargain, this attempt to fire his attorney purportedly led inexorably to maximum punishment. Only an irrational person would follow such a course, petitioner claims. His desire to represent himself *was* rational. As he explained to the judge, he wanted a more aggressive style of advocacy. He knew his lawyer from past cases and from earlier proceedings in the instant case. This gave him enough information from which to conclude that he would prefer different counsel. There is nothing in such a decision to suggest incompetence.

*Fourth*, petitioner points to the court-appointed psychologist's report that petitioner had low intelligence and a learning disability. The psychologist, however, concluded that petitioner was competent to stand trial. Furthermore, a learning disability and a low-level of intelligence did not indicate such a level of dysfunction that petitioner would be unable to rationally assist his attorney. The psychologist did not attest to any mental problems so severe as to suggest that petitioner lacked "the mental acuity to see, hear and digest the evidence" or to "communicate with counsel," two hallmarks of competency. *See Odle v. Woodford*, 238 F.3d 1084, 1089 (9th Cir. 2001) (requiring those abilities for trial).

The facts that petitioner claims demonstrated his incompetence to stand trial come nowhere near the mental disturbances and insanity pervasive in *Robinson* and *Drope*. Petitioner therefore has not demonstrated that the state court's determination of his competency, a factual issue, was unreasonable in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. 2254(d)(2).

Furthermore, he has not demonstrated that the state court, in rejecting his desire for a competency hearing, made a decision contrary to, or which involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**2.      INEFFECTIVE ASSISTANCE OF COUNSEL.**

**A.      Petitioner's Claim.**

Petitioner contends that his Sixth Amendment right to counsel was violated when his attorney did not negotiate a successful plea deal or persuade petitioner to accept the one offered.

**B.      Relevant Facts.**

Petitioner's trial attorney negotiated with the prosecutor for a plea agreement.  He communicated the offer to petitioner.  When petitioner said he would not accept it, counsel told him that he had no defense and predicted conviction.  He attempted to persuade petitioner by telling him that A.W. would be stigmatized by testifying about the lewd acts.  Later, the attorneys and judge discussed a possible deal, going through various possible compromises. Throughout this, petitioner's attorney represented his positions accurately.  He successfully requested that the court allow petitioner to describe his conditions directly.  Petitioner and judge spoke about the proposal.  At the end, however, petitioner rejected the deal.

**C.      Applicable Law.**

To make out a claim of ineffective assistance of counsel, petitioner must show (1) that counsel's performance was so deficient that it "fell below an objective standard of reasonableness," and (2) that "the deficient performance prejudiced the defense," such that the defendant did not have a fair and reliable trial.  A reviewing court must be "indulge a strong presumption that counsel's conduct" is effective.  A defendant challenging his or her lawyer's performance bears the burden of overcoming this presumption. *Strickland v. Washington*, 466 U.S. 668, 686–89 (1984).  The right to effective counsel extends to plea negotiations and requires the attorney to consult with the defendant on important decisions and to keep the defendant informed, so that he or she can knowingly decide whether or not to plead guilty. *Nunes v. Mueller*, 350 F.3d 1045, 1054 (9th Cir. 2003).

**D.      Analysis.**

Petitioner contends that attorney was required to "use all of his skills to do what was necessary to cause [petitioner] to accept the offer," particularly in light of the attorney's profession of doubt about petitioner's mental capacity.  Petitioner also attempts to prove that the

9

**United States District Court**
For the Northern District of California

1   attorney could have negotiated a successful deal by advancing several new possibilities that

2   might have persuaded petitioner and the prosecutor to compromise, such as subpoenaing A.W.

3   to court to hear petitioner's plea elocution and issuing a subpoena duces tecum for the boy's

4   school records, with a view to confirming the absence there of any mention of molestation and

5   then persuading petitioner to drop his demand for expurgation.

6       The trial attorney's approach to a possible plea in the instant case was not

7   constitutionally deficient.  He communicated the offer to petitioner (on a public holiday),

8   persistently advised him to accept it, explained its advantages and sought the court's

9   involvement in resolving the impasse in negotiations.  There was no evidence that the trial

10   attorney failed to advise his client on the advisability of pleading guilty.  It is also undisputed

11   that the trial attorney consulted with petitioner on important decisions and kept him informed,

12   such that he rejected the plea offer knowingly.

13       There is no merit to this Sixth Amendment claim.  Therefore, petitioner has not

14   demonstrated that the state courts, in rejecting his claim of ineffective assistance of counsel,

15   made a decision contrary to, or which involved an unreasonable application of, clearly

16   established federal law, as determined by the Supreme Court.

17       **3.      RIGHT TO SELF-REPRESENT.**

18           **A.      Petitioner's Claim.**

19       Petitioner claims that his rights to due process and a jury trial under the Fourteenth and

20   Sixth Amendments were violated by the court's denial of his motions to represent himself.

21           **B.      Relevant Facts.**

22       After the first four days of jury selection, defense counsel told petitioner he had no

23   defense and should accept the plea bargain.  The attorney also said he had not interviewed

24   witnesses with whom petitioner had asked him to speak.  On the next court day, petitioner

25   informed the court of his conditions for entering into the proposed plea agreement and said that,

26   if they were not met, he would move to represent himself.  The court denied the motion as

27   untimely, stated that he had not observed anything to indicate that the attorney-client

28   relationship was dysfunctional and said defense counsel had been doing his "usual excellent

job."  Petitioner renewed his motion the next day and was denied a second time.  Petitioner

1   renewed his motion two more times.  It was never granted.  The same attorney represented

2   petitioner throughout the trial.[5]

3   **C.    Applicable Law.**

4   Criminal defendants have a Sixth Amendment right to represent themselves at trial if

5   they knowingly and voluntarily waive their right to counsel, and do so "weeks" before trial.

6   *Faretta v. California*, 422 U.S. 806, 835–36 (1975); *see also Marshall v. Taylor,* 395 F.3d

7   1058, 1061 (9th Cir. 2005) (interpreting *Faretta* timing element).

8   **D.    Analysis.**

9   In the instant case, petitioner's motion was denied *after* trial began.  The trial judge's

10  first denial of the motion therefore falls within the rule of *Faretta*.  Obviously, the later denials

11  also were properly denied as untimely.

12  Petitioner cites *Snyder v. Massachusetts*, a decision holding that the Fourteenth

13  Amendment did not give defendants the right to be present when the jury visited the scene of a

14  crime.  *Synder* assumed, without deciding, that the Fourteenth Amendment would give

15  defendants in state criminal courts the right to be present when jurors are voir dired and at

16  closing arguments.  In the course of stating that assumption, it stated that "it will be in [the

17  defendant's] power, if present [then], to give advice or suggestion or *even to supercede his*

18  *lawyers altogether and conduct the trial himself*."  Even if this statement is construed as stating

19  that the defendant has a right to represent himself or herself beginning mid-trial, the Supreme

20  Court explicitly stated that it was basing the scenario on an assumption made for the purposes

21  of argument only.  291 U.S. 97, 106 (1934) (emphasis added).  The above-quoted portion of

22  *Snyder* was reiterated in *Faretta* as an example of past instances when the Court had recognized

23  a constitutional right to self-representation.  In a vacuum, this quotation in *Faretta* might lend

24  support to petitioner's argument that *Faretta* recognized a right to begin self-representation at

25  any time during trial.  *Faretta*, however, cited *Snyder* only for the proposition that there is a

26  right to self-representation.  It never explicitly approved the timing element mentioned in

27

28

---

[5] Petitioner did not make any claim based on his trial counsel's failure to interview witnesses.

11

**United States District Court**
For the Northern District of California

1    *Snyder*.  *Faretta*, 422 U.S. at 816.  This order therefore cannot hold that such a timing element

2    was clearly established Supreme Court law at the time of the trial.

3          There is no merit to petitioner's claim that his *Faretta* rights were violated.  Therefore,

4    petitioner has not demonstrated that the state courts, in rejecting his claim of ineffective

5    assistance of counsel, made a decision contrary to, or which  involved an unreasonable

6    application of, clearly established federal law, as determined by the Supreme Court.

7          **4.      ADMISSION OF HEARSAY EVIDENCE.**

8                **A.      Petitioner's Claim.**

9          Petitioner claims that his rights to due process under the Fourteenth Amendment and to

10   confront witnesses against him under the Sixth Amendment were violated when the court

11   allegedly did not make a proper finding of reliability before admitting into evidence videotaped

12   interviews of the victims.

13               **B.      Relevant Facts.**

14         In the instant case, the prosecution sought to introduce three videotaped interviews into

15   evidence at trial.  The trial judge viewed all three outside of court and admitted them on the

16   condition that victims testify.  The judge found that the statutory grounds for admission were met

17   and pointed out that the children were describing events they had experienced themselves.

18   Before it so ruled, there was enough time for the court to review the preliminary hearing

19   transcript.  It had also heard several pretrial motions.[6]

20         The videotaped youths both testified live at trial, so the jury saw the tapes.  In the first

21   tape, A.W. did not report lewd touching.  In the next, D.H. told a child-abuse services worker

22   that petitioner fondled the boy's penis and buttocks, made D.H. touch petitioner's penis and

23   masturbated in front of the boy.  In a third video, A.W. said petitioner had fondled the boy's

24   penis, orally copulated him and tried to make A.W. fondle and orally copulate petitioner.

25

26

27

28         [6] California Evidence Code Section 1360(a)(2) permits hearsay testimony of children under the age of
     12 under certain circumstances, including if the court "finds, in a hearing conducted outside the presence of the
     jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability."

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

C.     **Applicable Law.**

There is no Supreme Court rule requiring a judge to assess the reliability of non-scientific evidence before it is admitted.  "The aim of the requirement of due process is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence whether true or false."  *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).  The Due Process Clause also does not require a hearing, outside the jury's presence, to determine the admissibility of identification evidence.  To protect against conviction based on unreliable evidence, federal law instead depends upon cross-examination, presentation of defense evidence and defense argument.  *Watkins v. Sowders*, 449 U.S. 341, 347–48 (1981).

When out-of-court statements are accompanied by the declarant's in-court testimony, subject to cross-examination, the Confrontation Clause "places no restraints at all on the use of his prior testimonial statements."  *Crawford v. Washington*, 541 U.S. 36, 59 & n.9  (2004).

D.     **Analysis.**

Petitioner suggests that the Constitution requires a trial court to determine that evidence is reliable before admitting it.  He claims that if the court does not make such a determination, the defendant's claimed right not to be convicted on the basis of unreliable evidence is violated. There is no Supreme Court authority holding that a trial court has such a duty.  *Colorado v. Connelly* and *Watkins v. Sowders* suggest otherwise.  *See* 479 U.S. 157 and 449 U.S. 34, respectively.  *Crawford* forecloses his confrontation-clause argument.  This claim thus fails.

5.     **ADMISSION OF PROPENSITY EVIDENCE**.

A.     **Petitioner's Claim.**

Petitioner claims that his right to due process under the Fourteenth Amendment was violated by the trial court's admission into evidence of petitioner's prior convictions.

B.     **Relevant Facts.**

At petitioner's trial, the judge, over petitioner's objection, admitted into evidence proof that he twice had pleaded guilty to sexual offenses against boys.  The evidence was admitted to prove his propensity to molest children.  This proof consisted of (1) an abstract of a 1990 judgment against petitioner for violation of California Penal Code Section 288 (lewd and lascivious acts with a child under the age of 14 years), (2) court minutes indicating petitioner

13

1    pled guilty in 1989 to violating California Penal Code Section 243.4 (sexual battery), (3) an

2    abstract of judgment and a document reflecting a prison sentence, which together reflected both

3    convictions, (4) testimony from a district attorney's investigator identifying these documents, (5)

4    testimony that petitioner's sheriff's department file contained references to at least one of those

5    convictions, and (6) stipulations communicated to the jury by the judge that the victim of the

6    sexual battery was a five-year-old boy and that the victim of the Section 288 crime was a seven-

7    year-old boy; the parties also stipulated to the names of the boys, which the judge told to jurors.

8    Their initials were A.P. and J.H.  Despite stipulating to the ages and identities of these two

9    victims, the defense did not directly admit that petitioner had been convicted of the prior

10   offenses.  It did not, however, mount any evidence to rebut the prosecution's evidence.

11          The judge stated that he had reviewed the police reports and determined the following:

12   the earlier victims were boys who petitioner had touched sexually, the offenses occurred within

13   the previous decade or so, and the crimes were similar to the alleged crimes in the instant case.

14   The judge also stated that the evidence had probative value and that "there would not be any

15   prejudice" because the instant charges were at least as inflammatory as the past ones.

16                   **C.      Applicable Law and Analysis.**

17          Petitioner does not cite any Supreme Court that establishes any clear rules barring the

18   admission of propensity evidence to prove guilt.  The closest the Supreme Court came was in

19   *Estelle v. McGuire*, 502 U.S. 62, 75 (1991):  "[W]e express no opinion on whether a state law

20   would violate the Due Process Clause if it permitted the use of "prior crimes" evidence to show

21   propensity to commit a charged crime."  Thus the only clearly established Supreme Court law on

22   this subject is that there is no clearly established Supreme Court law on this subject.  Petitioner

23   cannot prevail on this claim.

24          **6.     CONVICTION BASED ON ERRONEOUS DESCRIPTION OF FORCE.**

25                   **A.      Petitioner's Claim.**

26          Petitioner argues that his rights to due process, a jury trial and jury instructions on all

27   elements of the offense were violated when the judge told jurors that they could find that

28   petitioner used force, an element of one count, if the act was against the will of the alleged

     victims and that there were differences in age and size between them and petitioner.

                                                    14

**B.     Relevant Facts.**

Petitioner was charged with violating California Penal Code Section 288(b), which requires that the lewd act be "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." Evidence was introduced at trial that petitioner took D.H.'s hand and placed it on petitioner's penis. The jury thus instructed:

> The term "force" means physical force that is substantially different from or substantially greater than that necessary to accomplish the lewd act itself. The requirement of force may be met by circumstantial evidence that such force was used as would reasonably demonstrate the act was undertaken against the will of the victim considering the totality of the circumstances, including the size and age of the defendant and the victim."

**C.     Applicable Law.**

An incorrect instruction on an element of the crime charged may result in a constitutional error if the person is convicted and the error deprived the defendant of a finding beyond a reasonable doubt that all facts necessary to the verdict were true. *See Winship,* 397 U.S. at 362. Misstatements of an element of the crime are subject to harmless-error review. *Rose v. Clark*, 478 U.S. 570, 579 (1986). The element of force in a prosecution for violation of California Penal Code Section 288(b) is defined as "physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself." *People v. Cochran*, 103 Cal. App. 4th 8, 13 (Cal. Ct. App. 2002).

**D.     Analysis.**

Petitioner's claim fails. The instruction defining force was a verbatim recital of black-letter California law on this element. The second sentence of the instruction does not vitiate the first. Contrary to petitioner's claim, the instruction does not allow the jury to find force solely on the basis of an act against the victim's will. The instruction requires that this act be one of force, a term that had been defined properly. The instruction did not suggest that the requirement could be met if the act was merely against the victim's will.

Nor did the instruction allow the jury to find that the requirement of force was met on the mere basis that petitioner was older and larger than the alleged victims. It merely invited the

*United States District Court*
For the Northern District of California

15

jury to assess whether force was used by considering, among other things, the sizes and ages of petitioner and the victims.

### 8. DEPRIVED OF JURY VERDICT ON MULTIPLE-VICTIM ISSUES.

#### A. Petitioner's Claim.

Petitioner claims the court violated his Fifth Amendment, Sixth and Fourteenth Amendment rights to due process and to a jury trial because the court of appeal upheld his sentencing under statutes applicable only when the crimes were perpetrated on separate occasions, despite the lack of a jury finding that the offenses did *not* occur on a single occasion, and a purported lack of substantial evidence that they occurred on multiple occasions.

#### B. Relevant Facts.

Petitioner was sentenced to fifteen years to life in prison on each of four counts, which were doubled under California's Three Strikes statutes, and ordered that those terms be served consecutively. The term was increased due to the judge's finding that the offenses were committed on multiple occasions.

#### C. Applicable Law.

If a person invokes his or her right to jury trial, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

#### D. Analysis.

Petitioner makes statutory construction claims that California law did not permit his sentence (Pet. 100-01). This is purely a state-law question and therefore not cognizable on federal habeas-corpus proceedings. The only federal claim he brings is that the state did not prove beyond a reasonable doubt that the crimes were committed on multiple occasions, rather than on a single occasion, and yet nevertheless used that fact to increase his sentence.

The judge's finding may have been used to increase petitioner's minimum sentence. It was not, however, used to increase his sentence beyond the statutory maximum prescribed by the jury's verdict. The jury's verdict authorized a life sentence. There is no way that a sentence

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

could be any longer.  The judge's findings therefore could not impermissibly increase petitioner's maximum sentence, the only sentencing length that is governed by *Apprendi*.

### 9.  DEPRIVED OF JURY VERDICT ON QUALIFICATION FOR PROBATION.

#### A.  Petitioner's Claim.

Petitioner claims the court violated the Fifth, Sixth and Fourteenth Amendments by depriving him of rights to due process and to a jury verdict when the court, instead of the jury, determined that he was not eligible for a certain type of probation.  That determination increased his sentence.

#### B.  Relevant Facts.

The trial court sentenced petitioner to terms of fifteen years to life for his three convictions of non-forcible lewd and lascivious conduct.  These terms could only be imposed under California Penal Code Section 667.61 if petitioner did not qualify for probation under Penal Code Section 1203.066(c).

#### C.  Applicable Law.

In addition to the rule of *Apprendi*, described above, one other Supreme Court rule is applicable here.  *Hicks v. Oklahoma*, 447 U.S. 343 (1980), held that if a state creates a significant liberty interest, its violation is also a violation of the due-process clause.  *Id.* at 346.  Thus, rights protected by the federal constitution may be created by a state statute.

#### D.  Analysis.

Petitioner claims that *Apprendi* entitled him to a jury finding on the fact of whether he qualified for probation under California Penal Code Section 1203.066(c), because (1) the determination of whether he so qualified was s a factual determination and (2) such a determination increases the statutory maximum punishment to which he was subject above that authorized by the jury verdict.  This is rejected for a variety of reasons.

*First*, there is the question of whether his qualification for probation under Section 1203.066(c) was a factual determination.  *Apprendi* reserved only factual determinations for the

17

jury.  Section 1203.066(c) provided that the harsher sentencing provisions shall not apply when *the court* makes all of the following findings:

> (1)  The defendant is the victim's natural parent, adoptive parent, stepparent, relative, or is a member of the victim's household who has lived in the victim's household.
>
> (2)  A grant of probation to the defendant is in the best interest of the child.
>
> (3)  Rehabilitation of the defendant is feasible, the defendant is amenable to undergoing treatment, and the defendant is placed in a recognized treatment program designed to deal with child molestation immediately after the grant of probation or the suspension of execution or imposition of sentence.
>
> (4)  The defendant is removed from the household of the victim until the court determines that the best interests of the victim would be served by returning the defendant to the household of the victim. . . .
>
> (5)  There is no threat of physical harm to the child victim if probation is granted.

These are not all factual determinations.  Whether a grant of probation is in the child's best interest is a legal issue.  Whether the defendant is placed in a recognized treatment program is a sentencing decision.  So too is whether the defendant is removed from the household.  Furthermore, a person qualified for probation under 1203.066(c) only if "the court makes" the requisite findings under Section 1203.066(c)(1)–(5).  Therefore, one of the determinations that must be made as to whether a defendant qualifies for probation under 1203.066(c) was whether the *court* has made the requisite findings.  Whether or not the court made those findings is a legal issue, not a factual determination reserved for the jury.

In the instant case, the court did not make those findings.  Even if the jury failed to make a determination as to whether or not the court made those findings, therefore, any such failure was harmless because in no event could it have made such a finding.

Another reason that the jury's failure to make such a determination was harmless is that, as a matter of law, petitioner was not eligible for probation under Section 1203.066(c).  That subsection only made eligible those people who would not otherwise be barred by any of the subparagraphs in Section 1203.066(a)(1)–(6).

18

In this case, petitioner was barred by Section 1203.066(a)(5), which does not allow probation for anyone "convicted of committing a violation of Section 288 . . . and who has been previously convicted of a violation of Section . . . 288."  The jury in this case found, beyond a reasonable doubt, that petitioner was guilty of a Section 288 violation in the instant case and that he had been convicted previously of violating that statute.  Therefore, there was no way he could have been eligible for parole.

Even assuming that the failure to make the requisite findings was an error of constitutional magnitude under *Hicks*, it was harmless.  This claim therefore fails.

**7.    CONVICTION BASED UPON GUILT BEYOND A REASONABLE DOUBT.**

**A.    Petitioner's Claim.**

Petitioner argues that his due-process right not to be found guilty except upon proof beyond a reasonable doubt was violated by the instructions to jurors.

**B.    Relevant Facts.**

The charges against petitioner included special allegations and one count charging that he had been convicted previously of violating California Penal Code Section 288.  The trial judge, over petitioner's objection, admitted into evidence proof of *two* prior convictions for sexual offenses against children, as described above.

In order to evaluate this claim properly, it is necessary to consider excerpts from the jury instructions, given in this order:

> Do not single out any particular sentence or any individual point or instruction and ignore the others.  Consider the instructions as a whole and each in light of all the others.

> *          *          *

> An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts established by the evidence.

> *          *          *

19

United States District Court

For the Northern District of California

1    Evidence has been introduced for the purpose of showing that the
2    defendant committed crimes other than that for which he is on trial.

3    This evidence, if believed, may be considered by you for the limited
     purpose . . . of determining if it tends to show the existence of the
4    intent which is a necessary element of the crime charged.

5    For the limited purpose for which you may consider such evidence,
6    you must weigh it in the same manner as you do all other evidence
     in the case.

7

8    Evidence has been introduced for the purpose of showing that the
     defendant engaged in a sexual offense on one or more occasions
9    other than that charged in this case.

10   "Sexual offense" means a crime under the laws of a state or of the
11   United States that involves . . . any conduct made criminal by Penal
     Code section 288(a) and 243-point-4.

12

13   If you find that the defendant committed a prior sexual offense, you
     may, but are not required to, infer that the defendant had a
14   disposition to commit the same or similar type of sexual offense.  If
     you find that the defendant had this disposition, you may, but are
15   not required to, infer that he was likely to commit and did commit
     the crime or crimes of which he is accused.[7]

16

17   Unless you are otherwise instructed, you must not consider this
     evidence for any other purpose.

18

19   Within the meaning of the preceding instructions, the prosecution
     has the burden of proving by a preponderance of the evidence that a
20   defendant committed crimes or sexual offenses other than those for
     which he is on trial.

21   You must not consider this evidence for any purpose unless you
22   find by a preponderance of the evidence that a defendant committed
     the other crimes or sexual offenses."

23

24                    *                    *                    *

25   In deciding whether or not to testify, the defendant may choose to
26   rely . . . upon the failure, if any, of the People to prove beyond a
     reasonable doubt every essential element of the charge against him.

27

28

---

[7] This paragraph, standing alone, was not challenged in the petition.  Furthermore, it was explicitly
approved by the Ninth Circuit in *Gibson v. Ortiz*, 387 F.3d 812, 822 (9th Cir. 2004).

United States District Court

For the Northern District of California

1    *                    *                    *

2

3    A defendant in a criminal action is presumed to be innocent until
     the contrary is proved, and in case of a reasonable doubt whether
     his guilt is satisfactorily shown, he is entitled to a verdict of not
4    guilty.  This presumption places upon the People the burden of
     proving him guilty beyond a reasonable doubt.

5

6    Reasonable doubt is defined as follows:  It is not a mere possible
     doubt because everything relating to human affairs is open to some
7    possible or imaginary doubt.  It is the state of the case which, after
     the entire comparison and consideration of all the evidence, leaves
8    the minds of the jurors in that condition that they cannot say that
     they feel an abiding conviction of the truth of the charge.

9

10   *                    *                    *

11

12   In order to find the defendant guilty, it is necessary for the
     prosecution to prove beyond a reasonable doubt the commission of
     a specific act or acts constituting that crime within the period
13   alleged.

14   *                    *                    *

15

16   If you have a reasonable doubt that [defendant committed the
     offenses against more than one victim], you must find it to be not
     true.

17

18   *                    *                    *

19

20   If you find the defendant guilty of one or more of the crimes
     charged or included in the crime charged in the information, you
     must determine whether the allegation of the prior conviction for a
21   violation of Penal Code section 288 sub A on or about March 20th,
     1990, is true.  The People have the burden of proving the truth of
22   the allegation.  That also must be proved beyond a reasonable
     doubt.  If you have a reasonable doubt that it is true, you must find
23   it to be not true."[8]

24        After these instructions came the prosecutor's closing argument.  She told the jury that

25   "it is beyond a doubt also true that the defendant has in fact suffered a prior conviction of

26   violating a child.  Therefore, the special allegations that you will find on your verdict forms

27

28   _____

     [8] These instructions were given orally by the judge.  A materially identical version was given to the
     jury in writing for its use during deliberations.

                                        21

should be true." She referenced these special allegations several times, each time in reference to a separate count in which they were alleged. She also stated that "you'll see that there is a second allegation that has to deal with the defendant's prior conviction . . . in 1990 . . . of a violation of Penal Code section 288." She later discussed "the defendant's lewd acts with respect to his '89 conviction . . . lewd acts with five-year-old [J.H.] and lewd acts with seven-year-old [A.P.]" She said that evidence of the prior convictions showed petitioner's intent and predisposition to commit the crimes, and bolstered two victims' credibility. After describing the alleged crimes against the victims in the instant case, she stated that it "is also true that the defendant has a prior conviction in 1990 for doing the same type of thing."

The prosecutor mentioned standards of proof on eight occasions in her closing argument. She said that the state had proven the sexual assaults "conclusively." She said that jurors should find certain special allegations to be true if the state had "prove[d] beyond a reasonable doubt that the defendant on a prior occasion was convicted of a violation of Penal Code Section 288." She said it was "painfully clear" that petitioner was guilty, that force was "clearly established" as to one count, that there was "absolutely no doubt as to what defendant's intent was, not when considering his 1989 conviction, not when considering his 1990 conviction," and that "it is beyond a doubt also true that the defendant has in fact suffered a prior conviction for violating a child." She advised jurors that if they found "that the People have proved beyond a reasonable doubt that in 1990 he was convicted of a violation of Penal Code Section 288, you . . . should find this also true." She closed by stating that "the People have established [guilt] overwhelmingly." In her rebuttal to the defense's closing argument, she referred to the "clear and convincing weight of the evidence" and the "clear weight of the evidence." *Not once did the prosecutor mention the preponderance of the evidence standard.*

In his closing argument, the defense attorney said to jurors, "you're here to decide whether that attraction that Mike Mendez has for children has gone beyond the realm of what is allowable and appropriate to the degree of committing criminal acts. You've learned that he has done that in the past." He mentioned the beyond-a-reasonable-doubt standard five times and paraphrased the main instruction on that point.

1    The jury returned verdicts in which it found that petitioner had a prior conviction under

2    California Penal Code Section 288 in 1990, and found him guilty of child molestation with a

3    prior conviction under Section 288.

4    Petitioner moved the court for a new trial, claiming it violated due process for the jury

5    to receive the preponderance-of-the-evidence instruction, arguing that this might lead them to

6    convict him despite having a reasonable doubt of his guilt.  The court denied the motion.

7    The state court of appeal considered the same argument.  It held that "a jury is not

8    misled by [the allegedly faulty jury instructions] when all jury instructions are considered as a

9    whole, including the usual instruction on the prosecution's burden to prove guilt beyond a

10    reasonable doubt.  *People v. Mendez*, No. A088557, slip op. at 12.

11              **C.    Applicable Law.**

12    The Due Process Clause allows conviction only if the prosecution proves beyond a

13    reasonable doubt every element of the charged crime.  This standard reduces the chance that an

14    innocent person will be convicted.  *In re Winship,* 397 U.S. 358, 362, 364 (1970).  *Winship*

15    does not require every single fact that the jury relies upon to be proven to a reasonable doubt.

16    Many facts that are not proven to that standard may, collectively, allow the jury to infer that an

17    element of the crime is proven beyond a reasonable doubt.  To enforce *Winship*'s rule, judges

18    must instruct juries that they cannot return a guilty verdict unless the government has carried

19    this burden.  If the judge does not do so, any jury verdict of guilty is constitutionally infirm.

20    *Cool v. United States,* 409 U.S. 100, 104 (1972).  A jury conviction based upon an

21    impermissibly low quantum of proof also violates the Sixth Amendment jury trial right

22    because it results in a improper verdict.  *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993).

23

24    There are two ways a judge can violate a defendant's right to this standard of proof.

25    The first is by giving a reasonable doubt instruction that is, in and of itself, too leniently

26    worded.  *See, e.g.*, *id.* at 277; *Cage v. Louisiana*, 498 U.S. 39, 39–41 (1990).  The second is by

27    giving some other faulty instruction that undercuts the force of an otherwise proper beyond-a-

28    reasonable-doubt instruction.  *See, e.g.*, *Cool*, 409 U.S. at 102–103; *Sandstrom v. Montana*,

442 U.S. 510, 521 (1979).

23

In the latter situation, the jury instruction may be susceptible to a reading that would render the verdict unconstitutional.  Yet the jury might also have read it in a way that would generate a proper verdict.  In such circumstances, the reviewing court considers the challenged instruction in light of the full set of jury instructions and in the context of the entire trial.  *See Naughten,* 414 U.S. at 146–47 (consider charge as whole); *United States v. Park*, 421 U.S. 658, 675 (1975) (in context of whole trial).  Viewing the verdict from this perspective, the court must decide whether there is a reasonable likelihood that the jury applied the challenged instruction in an unconstitutional manner.  *McGuire*, 502 U.S. at 72.  A verdict remains valid if a jury instruction only tangentially undercut a proper beyond-a-reasonable-doubt instruction.  *Naughten*, 414 U.S. at 149–50.  If it is reasonably likely that the jury applied the wrong standard, the violation is structural and the verdict is not subject to harmless error review.  *Sullivan*, 508 U.S. at 280–82.

A jury may base a finding of proof beyond a reasonable on circumstantial evidence, even if that evidence does not rule out every rational hypothesis that the defendant is innocent.  *Jackson v. Virginia*, 443 U.S. 307, 326 (1979).

### D.    Analysis.

The first inquiry is whether the state court of appeal made a decision that was contrary to clearly established federal law, as determined by the Supreme Court.  *See* 28 U.S.C. 2254(d)(1).  For this to have occurred, the state court of appeal would have had to fail to apply that Supreme Court authority or apply the correct authority incorrectly to a case involving facts "materially indistinguishable" from those in the controlling decision.  Petitioner does not claim that either of these things occurred.

Next is the question of whether the state court of appeal's decision involved an unreasonable application of federal law.  It may have done so either by applying the correct law to a new set of facts in a way that is objectively unreasonable, or by extending or failing to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Williams*, 529 U.S. at 405–12.

24

United States District Court

For the Northern District of California

1    There was nothing unreasonable in the state court of appeal's application of Supreme

2    Court caselaw on the beyond-a-reasonable-doubt requirement.  The instructions on this point

3    were not incorrect.  At most, the instructions were ambiguous.

4    Looking at the instructions as a whole, the preponderance of the evidence language

5    meant this:  If the prior convictions were not proven true by a preponderance of the evidence,

6    then the jury could not consider the prior convictions at all.  If they *were* proven by a

7    preponderance of the evidence, then the jury could consider them on the issues of intent and

8    predisposition.[9]  Petitioner argues that the instruction authorized the jury to *convict* him on

9    proof that satisfied the mere preponderance standard.  In fact, however, satisfaction of this

10   lower burden merely allowed *consideration* of the evidence.  The instruction never authorized

11   the jury to use the lower standard to find true any element of the crime.

12   This instruction actually protected petitioner, by barring the jury from considering the

13   crimes for any reason unless the prosecution proved by a preponderance that the occurred.  The

14   prosecution did not have to clear this hurdle with regard to any other additional evidence.

15   Taken as a whole, the instructions did not relieve the jury of its duty to acquit petitioner if the

16   facts necessary to convict him had not been proven true beyond a reasonable doubt.  Even

17   assuming that the instructions introduced ambiguity, it is not reasonably likely that jurors

18   understood the instructions to authorize them to convict on anything less than proof beyond a

19   reasonable doubt.  *McGuire*, 502 U.S. at 72.

20   Petitioner invokes *Gibson v. Ortiz*, 387 F.3d 812 (9th Cir. 2004).  In *Gibson*, the Ninth

21   Circuit affirmed a district court order granting a petition for a writ of habeas corpus to a

22   prisoner held pursuant to a state-court judgment.  The petitioner had been tried for battery and

23   sexual crimes against his wife.  The prosecutor had introduced evidence that Gibson had

24   committed prior sexual offenses against her for which he had never been charged or arrested.

25   The Ninth Circuit *approved* a jury instruction that allowed the jury to infer, if it found the

26

27   _____

28        [9] The instructions state:  "You must not consider this evidence *for any purpose unless* you find by a
     preponderance of the evidence that a defendant committed the other crimes or sexual offenses" (emphasis
     added).

United States District Court

For the Northern District of California

accused had committed the prior offenses, that he was disposed to commit the same or similar type of sexual offense.  The jury was told that if they found such a disposition, they could infer from it that the accused committed the charged offenses.  The Ninth Circuit held, however, that the beyond-a-reasonable-doubt standard had been violated by instructions allowing the prior sexual offense to be proven by a preponderance of the evidence.  "[T]he interplay of the . . . instructions allowed the jury to find that Gibson committed the uncharged sexual offenses by a preponderance of the evidence and thus to infer that he had committed the *charged* acts based upon facts found not beyond a reasonable doubt, but by a preponderance of the evidence." *Gibson*, 387 F.3d at 814, 817–18, 822.

Despite the similar instructions, there are fundamental distinctions between *Gibson* and the instant case.

*First*, in *Gibson*, the prior sexual offenses had not been proven in any prior proceeding, nor did Gibson admit their truth at trial.  They involved the same victim as the crimes for which he was being prosecuted.  In the instant case, by contrast, all evidence of other sexual offenses related to petitioner's prior two guilty pleas for sexual offenses against children.  A guilty plea comprehends "all of the factual and legal elements necessary to sustain a . . . judgment of guilt."  *See United States v. Broce,* 488 U.S. 563, 569 (1989).  Thus, petitioner had admitted, in prior proceedings, to the truth of factual allegations.  Furthermore, his defense attorney conceded in his closing argument that Gibson had committed prior sexual crimes against children.  He said, "You're here to decide whether that attraction that Mike Mendez has for children has gone beyond the realm of what is allowable and appropriate to the degree of *committing criminal acts*.  You've learned that *he has done that in the past*."  Finally, during trial Mendez stipulated to the ages and names of his victims in the prior sexual offenses.  Thus, the preponderance-of-the-evidence part of the instruction given in our case could never have come into play, for the priors were conclusively proven, undisputed and conceded to be true.

In supplemental briefing, petitioner practically conceded that evidence of the prior crimes was proven beyond a reasonable doubt.

26

United States District Court

For the Northern District of California

Petitioner will concede for the sake of the present argument that his prior convictions of violations of Penal Code sections 243.4 and 288, subdivision (a), were entitled to *res judicata* effect, in that he was *not entitled to re-litigate the issue* (if it were an issue) of whether he suffered those convictions."

All that can be inferred from the fact that petitioner suffered prior convictions of violations of section 243.4 and 288 is that there was a finding (or, as it happens, an admission) that he committed *some* acts *beyond a reasonable doubt* which violated those statutes. . . . Depending on what that evidence [of the prior acts] showed, *the trier could reasonably find that petitioner undoubtedly committed acts in violation of the statutes . . . .*

Everything respondent says is true of the proof of prior convictions.[10] . . . The evidence of petitioner's prior convictions *proved beyond a reasonable doubt* that he committed some acts of the same general type, in the sense that they fell under the same or a similar statutory provision as the charged offenses."

(Supplemental Br. 1, 3–4; Reply to Respondent's Supplemental Br. 1–2) (emphasis added except as to first reference to "convictions" in third paragraph; such emphasis in original).[11]

*Second*, in the instant case, one of the crimes was further found to be true beyond a reasonable doubt, in connection with California's recidivist statutes.  The jury found it true beyond a reasonable doubt that petitioner had a prior conviction for violation of California Penal Code Section 288 in 1990, and that he had committed child molestation with a prior conviction under Section 288.  Only the 1989 misdemeanor conviction was arguably not proven beyond a reasonable doubt.  In *Gibson*, by contrast, the jury did not find the prior offenses proven beyond a reasonable doubt.  Furthermore, there was ample reason to fear that the jury would convict Gibson on the basis of this other evidence alone, even if not proven beyond a reasonable doubt.

---

[10] Respondent had asserted in his supplemental brief that " [t]he evidence before the jury . . . showed that the prior sex offenses had already been established beyond a reasonable doubt.  Consequently, on review, the priors should be deemed to have been conclusively established at petitioner's current trial . . . " (Supplemental Brief 2).

[11] The aspect of the prior convictions that petitioner contested in these supplemental briefs was whether evidence of the prior convictions demonstrated enough similarity to the instant charges to support a propensity inference.  The weight that this evidence carried was a question for the jury.  There was certainly enough similarity, however, for this evidence to be relevant to the propensity issue.  If the jury found that it supported an inference of propensity, such a finding was reasonable in light of the evidence.  *See* 28 U.S.C. 2254(d)(2).

United States District Court

For the Northern District of California

1    They knew that he had not been punished for these other alleged crimes and that they were

2    against the same victim as the charged offenses.

3        *Third*, in *Gibson*, there were no beyond-a-reasonable-doubt instructions given after the

4    preponderance-of-the-evidence instruction.  The Ninth Circuit noted that fact as bolstering its

5    conclusion that the preponderance of the evidence instruction was a specific command that

6    carved out an exception to the general beyond-a-reasonable-doubt standard.  In the instant case,

7    *all* the beyond-a-reasonable-doubt instructions were given *after* the preponderance instructions.

8        *Fourth*, in *Gibson*, the state relied heavily on the faulty combination of instructions in

9    urging conviction.  The Ninth Circuit quoted the prosecutor at closing argument:

10

11              If you find that the defendant — this is very important.  If you find
              that the defendant committed these prior sexual offenses, you may,
12              but are not required to, infer — you can infer that he has that
              disposition, that he's the kind of guy that does this.  If you find that
13              he has this disposition, you can infer that he was likely to and, in
              fact, did commit these crimes.  That is how powerful [Section] 1108
14              evidence is.  It allows you to determine that this guy is that kind of
              guy.  All right.  Now you know the burden of proof, and the Court
15              told you the burden of proof of the crimes in this case, beyond a
              reasonable doubt.  The burden of proof for 1108 evidence, however,
16              is not beyond a reasonable doubt.  The burden of proof — I have to
              prove this 1108 evidence for you to make these inferences by what
17              is called a preponderance of the evidence.  This preponderance of
              the evidence, what is that?  Just a little bit more than not, 51 percent
18              against 49.  Shifting of the scale slightly, more evidence than not is
              preponderance of the evidence.

19

20              [Section] 1108 evidence, as I stated, by the preponderance of the
              evidence, shows that he has a disposition, that he is that kind of
21              guy. If you understand that, make these inferences that he did in
              fact commit these crimes.

22

23   *Gibson*, 387 F.3d at 824.  In the instant case, by contrast, the prosecutor never once mentioned

24   the preponderance standard.  Instead, she repeatedly referred to higher standards of proof and

25   urged the jury to conclude that the evidence satisfied them in proving guilt.[12]

26        [12] The *Gibson* court cited *Francis v. Franklin*, 471 U.S. 307 (1985), and *Boyde v. California*, 494 U.S.
27   380 (1990).  In *Franklin*, jurors are given two irreconcilable instructions.  One permitted an unconstitutional
     verdict; the other did not.  The Supreme Court held that the mere possibility that the jury followed the
28   impermissible instruction rendered the verdict unconstitutional.  *Franklin*, 471 U.S. at 322, 325.  The *Franklin*
     rule was superseded by *Boyde*'s "reasonable likelihood test," at least for cases in which the challenged
     instruction prevented the jury from considering certain evidence.  In *Boyde*, the Supreme Court held that when
     there are instructions that could be interpreted in either a constitutional or an unconstitutional way a court may

United States District Court

For the Northern District of California

1    The instant case is materially different from *Gibson*, requiring a different result.  Here,

2    the order of the instructions was different, the prosecutor did not capitalize on potential

3    ambiguity, the earlier crimes had been proven previously, one of the priors was proven beyond a

4    reasonable doubt at trial, petitioner's trial counsel conceded the truth of the priors in his closing

5    argument and his habeas counsel did so in his briefs.  This claim therefore fails.[13]

6                                   **CONCLUSION**

7    Petitioner conceded in his traverse that his petition's tenth claim was unfounded.  This

8    order therefore does not consider it.  For the reasons above, the petition for a writ of habeas

9    corpus is **DENIED**.

10          **IT IS SO ORDERED.**

11

12

13   Dated:  December 16, 2005                    _____

14                                            WILLIAM ALSUP
                                             UNITED STATES DISTRICT JUDGE
15

16

17

18   _____

     only overturn the verdict when there is "a reasonable likelihood that the jury has applied the challenged
19   instruction" in an unconstitutional way.  It noted that its standard differed from *Franklin*'s.  494 U.S. at 378–80.
            *Gibson* nevertheless found, in *Boyde*, support for the *Franklin* standard.  It cited a passage stating that
20   when alternate theories are involved, it is "equally likely that . . . the verdict rested on an unconstitutional
     ground" as on a constitutional one.  *Gibson*, 387 F.3d at 825 (quoting *Boyde*, 494 U.S. at 380).  That portion of
21   *Boyde*, however, was not addressing juries that might have convicted on either a permissible or an
     impermissible *burden of proof*.  Instead, *Boyde* addressed situations when the jury may have convicted on either
22   a constitutional or an unconstitutional *theory of liability*.  *See, e.g., Stromberg v. California*, 283 U.S. 359
     (1931) (conviction under statute barring display of "a red flag" both "as a sign . . . of opposition to organized
23   government" and as an "invitation . . . to anarchistic action" was invalid because the former prohibition was
     protected by the First Amendment) (cited by *Boyde*).  The other cases cited in this section of *Boyde* stand for the
24   same proposition.  Perhaps there is room to question *Gibson*'s use of *Boyde* and *Franklin*.  This order, however,
     does not and need not rely upon that possible difference of opinion.

25          [13] Also, petitioner may be boxed in by his own previous statements.  Judicial estoppel bars a litigant
     from asserting a position and inducing judicial reliance upon it in one litigation, then asserting a contrary
26   position in later litigation.  *See Morris v. California*, 966 F.2d 448, 452–55 (9th Cir. 1991).  Petitioner induced
     judicial reliance in the earlier criminal prosecutions when he pled guilty, effectively trading his plea for lenient
27   treatment.  Now he attempts to assert that the jury could have had a reasonable doubt about whether the very
     acts to which he had admitted actually occurred.  It is not entirely clear that judicial estoppel could be applied to
28   petitioner, given the serious liberty interest at stake.  *Ibid.*  If it could, however, it would tend to militate against
     even considering this claim.